

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES JOHNSON | CIVIL ACTION NO. |
| PLAINTIFF, | 3:02CV2065(CFD) |
| v. | |
| SOUTHERN CONNECTICUT STATE UNIVERSITY AND BRIDGEPORT HOSPITAL SCHOOL OF NURSE ANESTHESIA | |
| DEFENDANT. | October 30, 2003 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S BRIDGEPORT HOSPITAL SCHOOL OF NURSE ANESTHESIA'S MOTION TO DISMISS**

The defendant, Bridgeport Hospital School of Nurse Anesthesia ("Bridgeport Hospital"), has moved to dismiss all counts of the plaintiff's complaint. Bridgeport Hospital argues that it was not Mr. Johnson's "employer" and, therefore, can not be sued under Section 504 of the Federal Rehabilitation Act of 1973 ("Section 504"). However, because Section 504 applies to any "federal fund recipient" regardless of whether the entity is also an "employer," the defendant's Motion to Dismiss should be denied. Because Mr. Johnson does have a claim under Section 504, there is no reason why the court should dismiss his pendent state law claims.

I.  **PRELIMINARY STATEMENT**

James Johnson was subjected to disability discrimination because of his mental disability in his role as a student as well as an employee of Bridgeport Hospital School of Nurse Anesthesia. The defendant does not challenge the plaintiff's claim that it is a federal fund recipient. Rather, it contends that Mr. Johnson is not an "employee" and, therefore, is not

covered under Section 504. The defendant never addressed the question of why Mr. Johnson is not covered by Section 504 in his role as a student in its Nurse Anesthesia Program.

The defendant contends that Mr. Johnson can not be an "employee," as defined by Title I of the Americans with Disabilities Act of 1990 ("ADA"), because he does not receive compensation and only receives benefits "similar to those generally offered to college students." However, the defendant fails to explain either what benefits it offers to its nurse anesthesia students or what benefits college students generally receive. Because the plaintiff could show that he receives benefits that could result in his being considered an "employee" under the ADA, the defendant's motion to dismiss his argument that he is also an "employee" should be denied.

Finally, the defendant argues that the plaintiff's claim should be dismissed because the service of process was insufficient. Because there is a reasonable possibility that the plaintiff could still accomplish service and the defendant had notice of service, the plaintiff requests that the court provide him with 30 days to carry out service or, alternatively, to dismiss the complaint without prejudice.

II.     **STATEMENT OF FACTS**

In January 1999, the plaintiff was informed that he had been selected as a candidate for the Southern Connecticut State University and Bridgeport Hospital Nurse Anesthesia Program for the class starting May 1999. (Complaint ¶14). (hereinafter referred to as "Comp.¶___")

The plaintiff accepted the offer to join the Southern Connecticut State University and Bridgeport Hospital Nurse Anesthesia Program and started in May 1999. (Comp. ¶15).

Bridgeport Hospital School of Nurse Anesthesia is a "federal fund recipient," as defined by Section 504. (Comp. ¶6).

2

The plaintiff successfully completed the academic portion of the Nurse Anesthesia Program ("the Program") and was scheduled to graduate from the Program in May 2001 after he completed the clinical phase of the Program. (Comp. ¶16).

In or around March 2001, the plaintiff's performance level during the clinical portion had declined somewhat due to the effects of the extreme anxiety he was experiencing. (Comp. ¶17).

The plaintiff has a mental impairment which substantial limits him in one or more life activities. (Comp.¶8). The plaintiff's mental impairment is a chronic disability. (Comp. ¶9). Each of the defendants regarded the plaintiff as having a substantial impairment of one or more major life activities. (Comp. ¶10). Each of the defendants was aware that the plaintiff had a mental disability. (Comp. ¶11).

On March 8, 2001, Mr. Johnson met with Dr. Buonafede, the Medical Director of the School of Nurse Anesthesia, and Dr. Mericnyak, the Director of the School of Nurse Anesthesia, to discuss the plaintiff's performance in the clinical phase of the Program. (Comp. ¶18).

After the meeting held on March 8, 2001, Dr. Buonafede issued a memorandum (which the plaintiff did not become aware of until January 2002) stating that "[i]n my opinion (not professionally trained in psychiatry, but capable of recognizing impaired function in students in training), Jim appears to be suffering the effects of an acute stress response or some form of chronic anxiety disorder. It may be wise to consider some form of professional counseling and/or psychological evaluation in order to better help him overcome some of the difficulties he is experiencing in his training program. Until this form of help for him is explored, I question whether or not he is capable of successfully attaining his educational goals." (Comp. ¶19).

On March 22, 2001, Mr. Johnson met with Dr. Buonafede and Dr. Mericnyak. (Comp. ¶20). They informed the plaintiff that his clinical privileges were immediately suspended. (Comp. ¶20). They provided the plaintiff with the following three (3) options:

3

    (1)   •    Continue his academics and complete the requirements for a Masters in Science ("MS") Degree from Southern Connecticut State University.

          •    Take a leave of absence until September 2001 and restart his clinical experience for a period of nine months. (This would extend his graduation date from May 2001 to May 2002.)

    (2)   •    Continue his academics and complete his MS Degree, or

    (3)   •    Resign from the program.

(Comp. ¶20).

At no time before, during, or after the March 22, 2001 meeting - when the plaintiff was told of his suspension and provided with the aforesaid three options - was he offered any type of professional counseling or psychological evaluation to help him overcome the difficulties he was facing in the Program. (Comp. ¶21).

The plaintiff returned to the Program in September 2001 after completing the Leave of Absence ("LOA"). (Comp. ¶22). On December 11, 2001, Mr. Johnson was dismissed from the Southern Connecticut State University and Bridgeport Hospital Nurse Anesthesia Program. (Comp. ¶23).

The plaintiff successfully performed his duties during the three-month period between when he returned from his LOA and was terminated from the Program. (Comp. ¶24).

The defendants refused to accommodate his mental disability during the three-month time period between when the plaintiff returned from the LOA until the time he was dismissed from the Program. (Comp. ¶25).

All the defendants refused to modify and provide the plaintiff with a reasonable modification of their policies, practices and procedures during the three-month time period between when he returned from the LOA until he was dismissed. (Comp. ¶26).

. The student handbook issued in May 2001 by the Southern Connecticut State University and Bridgeport Hospital Nurse Anesthesia Program, states on Page 1 that their faculty and administration "will assist a student whenever possible...." (Comp. ¶27). Despite that representation, however, the defendants failed to assist him after he returned from a LOA in September 2001 even though the Medical Director, Dr. Buonafede's stated that: (a) Mr. Johnson was suffering from the effects of either an acute stress response or chronic anxiety disorder; (b) he needed professional counseling and/or a psychological evaluation; and (c) "[u]ntil this form of help for him is explored, I question whether or not he is capable of successfully attaining his educational goals." (Comp. ¶27).

The defendants refused in engage to engage in good faith in the reasonable accommodation and/or reasonable modification process. (Comp. ¶28).

At all relevant times, the plaintiff was qualified to perform the essential functions of his position in the Nurse Anesthesia Program with or without a reasonable accommodation and/or reasonable modification. (Comp. ¶29). The defendants aforesaid actions were willful and intentional. (Comp. ¶30). The plaintiff has suffered severe emotional distress. (Comp. ¶31).

While he was a student and employee in the Bridgeport Hospital School of Nurse Anesthesia, the plaintiff received a variety of benefits, including health insurance benefits, at no cost. (See Exhibit 1, Affidavit of James Johnson ¶5).

### III. STANDARD OF REVIEW

When examining a Motion to Dismiss, the court must accept as true all of the allegations contained in the plaintiffs' complaint and draw all inferences in favor of the plaintiff. IUE AFL-

CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1058 (2d Cir. 1993). A court can only dismiss a complaint "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). A complaint should not be dismissed unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle him to relief." Lyons v. Legal Aid Society, 68 F.3d 1512, 1514 (2d Cir. 1995) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

Plaintiffs are not required to make factual allegations that support each element of a prima facie case. Swierkiewicz v. Sorema, N. A. 534 U.S. 506, 512 (2002). Rather, under Fed. R. Civ. P. 8(a)'s liberal pleading standards, plaintiffs are merely required to give the defendant "fair notice" of the plaintiff's claims and the grounds on which they rest. Id. (citing Conley v. Gibson, 355 U.S. 41, 47 (1957)).

## IV. LEGAL ARGUMENT

### A. THE DEFENDANT IS LIABLE UNDER SECTION 504 REGARDLESS OF WHETHER IT WAS THE PLAINTIFF'S EMPLOYER

#### 1. The Defendant May Be Liable Under Section 504 Because It Is A "Federal Fund Recipient"

Section 504, which went into effect in 1973, provides that:

> No otherwise qualified handicapped individual...shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. 29 U.S.C. §704.

In 1988, Congress amended Section 504 by passing the Civil Rights Restoration Act, which provides that any program in any institution that receives federal financial aid, regardless of how specific the purpose or program for which the aid was given, must adhere to Section 504.

6

Leake v. Long Island Jewish Medical Center, 869 F.2d 130, 131 (2d Cir. 1988) (citing Pub. L. No. 100-259, 102 Stat. 28, 31 (1988)).

The foundation of the defendant's motion to dismiss is that, because the plaintiff alleges that he "was a student of and employed by" the defendant, he somehow "assumed the burden of proving the standards for an employment discrimination case against the Program, as set forth in the Americans with Disabilities Act ("ADA"). The defendant provided no legal support for its argument. (Def. Memo. of Law at 4). The defendant proceeded to argue that, because the plaintiff was not an "employee" as defined by the ADA, his Section 504 claim should be dismissed.

The defendant's argument should be rejected because, as a student in the defendant's Program,[1] he is covered under Section 504 regardless of whether or not he can prove that he is also an "employee" of the defendant.

Although Section 504 can be applied to an employment relationship, its protections are not limited to employment relationships. Section 504 has often been applied to situations involving students of federal fund recipients. For example, in the first case where the United States Supreme Court examined Section 504, the Court held that a professional school did not violate Section 504 when it imposed physical qualifications for admission to their training programs. Southwestern Community College v. Davis, 442 U.S. 397, 413-14 (1979); see also Doe v. New York University, 666 F.2d 761 (2d Cir. 1981) (holding that defendant did not violate Section 504 when it refused to readmit the plaintiff to its medical school due to her psychiatric problems).

---

[1] Students in the defendant's Nurse Anesthesia Program must pay tuition to enroll in the Program and, if the student successfully completes the Program, is awarded a Certificate in Nurse Anesthesia from Bridgeport Hospital. See Affidavit of Diane Mericnyak, ¶¶4, 9, annexed to Def. Memo. of Law.

7

The plaintiff has alleged that the defendant is a federal fund recipient and that he was discriminated against by the defendant based on his mental disability in his role as a student and as an employee. The defendant does not claim that it is not a "federal fund recipient." Therefore, even if plaintiff can not show that he was an employee of the defendant, he can still show that he was subjected to disability discrimination in his role as a student of the defendant.

2. **The Plaintiff Received Significant Benefits From The Defendant And, Therefore, May Be An "Employee"**

The defendant failed to present any legal support for it implicit proposition that because Johnson also alleged he was employed by a federal fund recipient, he somehow lost whatever protection against disability discrimination he had as a student of a federal fund recipient. However, even if this court endorsed that proposition, the defendant's motion to dismiss would still have to be denied because the plaintiff could show that, in fact, he was an "employee" of the defendant.

The defendant argues that the plaintiff can not maintain that he was an "employee" because he "received no actual remuneration from the Program..." (Def. Memo. of Law at 5). However, although the defendant's claim that it's Student Registered Nurse Anesthetists ("SRNA's") "receive no compensation while enrolled in the Program," the defendant admitted that the SRNA's "receive some benefits" (See Affidavit of Diane Mericnyak, ¶8, annexed to Def. Memo. of Law). In York v. Association of the Bar of the City of New York, 286 F.3d 122 (2d Cir. 2002), the Court said that a "financial benefit" is essential to the existence of an employer-employee relationship. Id. at 125-26 (citing O'Connor v. Davis, 126 F.3d 112, 115-16 (2d Cir. 1997)). According to the Second Circuit, the factors which are indicative of whether or not the individual receives "financial benefits" includes "salary or other wages, employee benefits, such as health insurance, vacation, sick pay, or, the promise of any of the foregoing." Id. at 126 (citing O'Connor, 126 F.3d at 116). An employer who does not receive compensation might still

8

be considered an "employee" if she receives other financial benefits which meet "a minimum level of 'significance,' or substantiality." Id. (citation omitted).

What, if any "financial benefits" does the defendant provide to its SRNA's? According to the defendant "they receive some benefits, similar to those generally offered to college students." See Affidavit of Diane Mericnyak, ¶8, annexed to Def. Memo. of Law. Because the defendant does not explain what benefits are generally offered to college students, we are left to guess what benefits the SRNA's received from the defendant.

The plaintiff's claim that – in addition to being covered as a student – he was also covered under Section 504 in his role as an employee can only be dismissed if the defendant proves beyond a doubt that Johnson could not prove any set of facts in support of his claim that he was an employee.

According to James Johnson, the Nurse Anesthesia Program provided him with: (1) health insurance benefits; (2) a life insurance policy, and (3) annual cash payments of $250. (Exhibit 1, Affidavit of James Johnson, ¶¶5,6,7,8). When the plaintiff was terminated from the Nurse Anesthesia Program, he received a "COBRA" notice (Exhibit 1, Affidavit of James Johnson, ¶10). The defendant also would have forgiven a $25,000 loan if he agreed to work for a period of one year with Bridgeport Anesthesia Associates, P.C. (Exhibit 1, Affidavit of James Johnson, ¶9). College students generally do not receive health insurance benefits, life insurance policies or COBRA notices after graduation. The defendant's provision of those benefits reached a minimum level of significance and could lead a jury to conclude that he was an "employee," as defined by the ADA.

Based on the plaintiff's claim that he was employed by the defendant, the defendant's admission that the plaintiff received "some benefits" and the plaintiff's affidavit that he received health and life insurance benefits and money from the defendant, the defendant has failed to

9

show that the plaintiff could not prove a set of facts that would entitle him to relief. Therefore, the defendant's motion to dismiss should be denied.

**B.    THE COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER THE PLAINTIFF'S STATE LAW CLAIMS**

The defendant accurately states that the plaintiff's Section 504 claim is the only federal claim he has alleged. The plaintiff has alleged five state law claims and asked the court to exercise supplemental jurisdiction over those claims. If the court dismisses his Section 504 claims, it may decline to exercise jurisdiction over his state law claims. 28 U.S.C. §1367(c).

Because the defendant has offered the court no reason to dismiss his Section 504 claim with respect to his status as a student, his Section 504 claim should not be dismissed. However, if the court dismisses his Section 504 claim, the plaintiff joins the defendant in requesting that the court dismiss his pendent state claims without prejudice.

**C.    THE PLAINTIFF REQUESTS THAT THE COURT QUASH SERVICE AND GIVE THE PLAINTIFF PERMISSION TO RE-SERVE THE COMPLAIN**

The defendant argues that the complaint should be dismissed for insufficiency of service. The plaintiff served an individual who is employed by an affiliated corporation of Bridgeport Anesthesia Associates, which is one of the three entities that operate the defendant. The individual served would not qualify as an officer, manager or general agent of the defendant and, therefore, it appears that service of process was not sufficient.

If service of process is insufficient, a court may either dismiss the case without prejudice or retain jurisdiction and quash service. See, Umbenhauer v. Woog, 969 F.2d 25, 30 (3d Cir. 1992); Hickory Travel Systems, Inc. v. Tui AG, 213 F.R.D. 547, 553 (N.D. Cal. 2003); Cole v. Aetna Life & Casualty, 70 F.Supp. 2d 106, 111 (D.Conn. 1999); Brand v. Mazda Motor of America, Inc., 920 F.Supp. 1169, 1172-73 (D.Kan. 1997). Dismissal is not an appropriate remedy when there is a reasonable possibility that the plaintiff still could accomplish service. Id.

In <u>Romandette v. Weetabix Company, Inc.</u>, 807 F.2d 309 (2d Cir. 1986), the court stated that "incomplete or improper service will lead the court to dismiss the action <u>unless it appears that proper service may still be obtained</u>." <u>Id</u>. at 311 (<u>citation omitted</u>). A motion to dismiss is also generally not appropriate when the defendant has received actual notice of the complaint and will not be prejudiced if the suit is allowed to continue. <u>Id</u>.

The plaintiff can still carry out proper service in this case and requests that the court provide him with 30 days to do so. In <u>Cole v. Aetna Life & Casualty</u>, 70 F.Supp. 2d 106 (D.Conn. 1999), the court gave the plaintiff 60 days to effectuate proper service on eight defendants who had not been properly served. <u>Id</u>. at 111. In <u>Lyons v. Jones</u>, 168 F. Supp. 2d 1(D. Conn. 2001), the court gave the plaintiff 45 days to carry out proper service against two individual defendants who were not properly served. <u>Id</u>. at 7-8. Bridgeport Hospital School of Nurse Anesthesia had notice of the complaint and will not be prejudiced by allowing the suit to continue.

Alternatively, if the court decides to grant the motion to dismiss based on improper service, the plaintiff requests that the court dismiss the complaint without prejudice.

V.     **CONCLUSION**

For all the foregoing reasons, the plaintiff requests that the court deny the defendant's motion to dismiss.

                                                THE PLAINTIFF,
                                                JAMES JOHNSON

                                                By _/s/ Gary Phelan_____
                                                Gary Phelan (CT 03670)
                                                Gary Phelan, L.L.C.
                                                433 South Main Street, Suite 117
                                                West Hartford, CT  06110
                                                (860) 313-5005

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was mailed, first-class, postage prepaid, on October 30, 2003 to:

Edward Osswalt, Esq.
Assistant Attorney General
55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120

Stuart M. Katz, Esq.
Cohen & Wolf, P.C.
1115 Broad Street
Bridgeport, CT  06604

_____
Gary Phelan

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JAMES JOHNSON                                                   CIVIL ACTION NO.

       PLAINTIFF,                                              3:02CV2065(CFD)

v.

SOUTHERN CONNECTICUT STATE
UNIVERSITY AND BRIDGEPORT
HOSPITAL SCHOOL OF NURSE
ANESTHESIA

       DEFENDANT.                                              October 28, 2003

## AFFIDAVIT OF JAMES JOHNSON

James Johnson, being duly sworn, deposes and says:

1. I am over the age of eighteen (18) and believe in the obligation of an oath.

2. I am the plaintiff in this matter.

3. I was selected as a candidate for the Bridgeport Hospital Nurse Anesthesia Program ("the Program") for the class starting in May, 1999. I successfully completed the academic portion of the Program and was scheduled to graduate in May, 2001 from the Program after I completed the clinical phrase of the Program.

4. For reasons which are set forth in the Complaint filed in this lawsuit, I took a leave of absence from the Program from on or about March 22, 2001 until September, 2001. I was dismissed from the Program on December 11, 2001.

5. During the time period when I was a student and an employee in the Nurse Anesthesia Program, I was provided with full health insurance benefits at no cost by the Bridgeport Hospital School of Nurse Anesthesia.

6. The Bridgeport Hospital School of Nurse Anesthesia provided me with a life insurance policy.

7. In or around December 1999, I was paid $250 by the Bridgeport Hospital School of Nurse Anesthesia.

8. In or around December 2000, I was paid $250 by the Bridgeport Hospital School of Nurse Anesthesia.

9. When I entered the Nurse Anesthesia Program, I was extended a $25,000.00, no interest loan by the Bridgeport Hospital School of Nurse Anesthesia. Under the terms of the loan, I was required to repay them within two (2) years of completing the Program. There was a clause in the Loan Agreement which stated that the loan would be forgiven if I worked for Bridgeport Anesthesia Associates, P.C. for a period of one year following graduation from the Bridgeport Hospital School of Nurse Anesthesia.

10. After I was terminated from the Nurse Anesthesia Program, I received a "COBRA" notice to enable me to continue to receive health insurance benefits for up to 18 months.

_____
James Johnson

Subscribed to and sworn to before me this 29 day of October, 2003.

Gordene P Dugan
_____
Notary Public
Residing in Tacoma
Commission expires
2/17/05

2