

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JAMES JOHNSON | CIVIL ACTION NO.: |
| PLAINTIFF, | 3:02CV2065(CFD) |
| v. | |
| SOUTHERN CONNECTICUT STATE UNIVERSITY AND BRIDGEPORT HOSPITAL SCHOOL OF NURSE ANESTHESIA | |
| DEFENDANT. | October 30, 2003 |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT SOUTHERN CONNECTICUT STATE UNIVERSITY'S MOTION TO DISMISS

### I. PRELIMINARY STATEMENT

The defendant, Southern Connecticut State University ("Southern Connecticut"), has moved to dismiss all but one of the counts of the plaintiff's complaint pursuant to Fed. R. Civ. P. (12)(b)(6). In response to the defendant's Motion to Dismiss, the plaintiff will no longer be seeking punitive damages under Section 504 of the Federal Rehabilitation Act of 1973, 29 U.S.C. §794(a) ("Section 504") and will withdraw his claim under Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §12132 ("ADA"). For the reasons that will be amplified in this Memorandum of Law, however, the plaintiff agrees with the defendant that he can still pursue his second cause of action under Section 504 all actions which occurred on or after September 25, 2001.

II.  **STATEMENT OF FACTS**

In January 1999, James Johnson was informed that he had been selected as a candidate for the Southern Connecticut State University and Bridgeport Hospital Nurse Anesthesia Program for the class starting May 1999. (Complaint. ¶14) (hereinafter referred to as "Comp. ¶ ____")

The plaintiff accepted the offer to join the Southern Connecticut State University and Bridgeport Hospital Nurse Anesthesia Program and started in May 1999. (Comp. ¶15).

The plaintiff successfully completed the academic portion of the Nurse Anesthesia Program ("the Program") and was scheduled to graduate from the Program in May 2001 after he completed the clinical phase of the Nurse Anesthesia Program. (Comp. ¶16).

In or around March 2001, the plaintiff's performance level during the clinical portion had declined somewhat due to the effects of the extreme anxiety he was experiencing. (Comp. ¶17).

The plaintiff has a mental impairment which substantial limits him in one or more life activities. (Comp. ¶8). (Comp. ¶9). Each of the defendants regarded the plaintiff as having a substantial impairment of one or more major life activities. (Comp. ¶10). Each of the defendants was aware that the plaintiff had a mental disability. (Comp. ¶11).

The plaintiff has a mental disorder, as defined by Conn. Gen. Stat. §17a-549.

On March 8, 2001, the plaintiff met with Dr. Buonafede, the Medical Director of the School of Nurse Anesthesia, and Dr. Mericnyak, the Director of the School of Nurse Anesthesia, to discuss the plaintiff's performance in the clinical phase of the Program. (Comp. ¶18).

After the meeting held on March 8, 2001, Dr. Buonafede issued a memorandum (which the plaintiff did not become aware of until January 2002) stating that "[i]n my opinion (not professionally trained in psychiatry, but capable of recognizing impaired function in students in training), Jim appears to be suffering the effects of an acute stress response or some form of chronic anxiety disorder. It may be wise to consider some form of professional counseling and/or psychological evaluation in order to better help him overcome some of the difficulties he is experiencing in his training program. Until this form of help for him is explored, I question whether or not he is capable of successfully attaining his educational goals." (Comp. ¶19).

On March 22, 2001, Mr. Johnson met with Dr. Buonafede and Dr. Mericnyak. (Comp. ¶20). They informed the plaintiff that his clinical privileges were immediately suspended. (Comp. ¶20). They provided the plaintiff with the following three (3) options:

(1) • Continue his academics and complete the requirements for a Masters in Science ("MS") Degree from Southern Connecticut State University.

• Take a leave of absence until September 2001 and restart his clinical experience for a period of nine months. (This would extend his graduation date from May 2001 to May 2002.)

(2) • Continue his academics and complete his MS Degree.

(3) • Resign from the program.

(Comp. ¶20).

At no time before, during, or after the March 22, 2001 meeting when the plaintiff was told of his suspension and provided with the aforesaid three options was he offered any type of professional counseling or psychological evaluation to help him overcome the difficulties he was facing in the Program. (Comp. ¶21).

3

Case 3:02-cv-02065-CFD    Document 24    Filed 10/31/2003    Page 4 of 10


The plaintiff returned to the Program in September 2001 after completing the Leave of Absence ("LOA"). (Comp. ¶22).

On December 11, 2001, Mr. Johnson was dismissed from the Southern Connecticut State University and Bridgeport Hospital Nurse Anesthesia Program. (Comp. ¶23).

The plaintiff successfully performed his duties during the three-month period between when he returned from his LOA and was terminated from the Program. (Comp. ¶24).

The defendants refused to accommodate his mental disability during the three-month time period between when the plaintiff returned from the LOA until the time he was dismissed from the Program. (Comp. ¶25).

All the defendants refused to modify and provide the plaintiff with a reasonable modification of their policies, practices and procedures during the three-month time period between when he returned from the LOA until he was dismissed. (Comp. ¶26).

The student handbook issued in May 2001 by the Southern Connecticut State University and Bridgeport Hospital Nurse Anesthesia Program, states on Page 1 that their faculty and administration "will assist a student whenever possible...." (Comp. ¶27). Despite that representation, however, the defendants failed to assist him after he returned from a LOA in September 2001 even though the Medical Director, Dr. Buonafede's stated that: (a) Mr. Johnson was suffering from the effects of either an acute stress response or chronic anxiety disorder; (b) he needed professional counseling and/or a psychological evaluation; and (c) "[u]ntil this form of help for him is explored, I question whether or not he is capable of successfully attaining his educational goals." (Comp. ¶27).

The defendants refused in engage to engage in good faith in the reasonable accommodation and/or reasonable modification process. (Comp. ¶28).

At all relevant times, the plaintiff was qualified to perform the essential functions of his position in the Nurse Anesthesia Program with or without a reasonable accommodation and/or reasonable modification. (Comp. ¶29).

Southern Connecticut is a "federal fund recipient", as defined by Section 504. (Comp. ¶5).

### III. STANDARD OF REVIEW

When examining a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept as true all of the allegations contained in the plaintiffs' complaint and draw all inferences in favor of the plaintiff. IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1058 (2d Cir. 1993). A court can only dismiss a complaint "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). A complaint should not be dismissed unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle him to relief." Lyons v. Legal Aid Society, 68 F.3d 1512, 1514 (2d Cir. 1995) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

Plaintiffs are not required to make factual allegations that support each element of a prima facie case. Swierkiewicz v. Sorema, N. A. 534 U.S. 506, 512 (2002). Rather, under Fed. R. Civ. P. 8(a)'s liberal pleading standards, plaintiffs are merely required to give the defendant "fair notice" of the plaintiff's claims and the grounds on which they rest. Id. (citing Conley v. Gibson, 355 U.S. 41, 47 (1957)).

### IV. LEGAL ARGUMENT

1. **The Plaintiff Requests that the Court Dismiss his Claim Under Conn. Gen. Stat. § 17a- 549 Without Prejudice**

The defendant does not claim that the plaintiff has failed to state a claim under Conn. Gen. Stat. § 17a-549. Rather, the defendant contends that because the language of the statute

5

does not contain an unequivocal expression of an intent to waive the state's sovereign immunity from suit in federal court, the plaintiff should have filed the claim in Connecticut state court. Rather than challenging the defendant's arguments, the plaintiff requests that the court grant the defendant's motion to dismiss the first count of the complaint without prejudice so he can file the claim in state court.

### 2. The Plaintiff Can Pursue His Claims Under Section 504 for Events Which Occurred on or After September 25, 2001

In Garcia v. S.U.N.Y. Health Science Center of Brooklyn, 280 F.3d 98 (2d Cir. 2001), the Second Circuit stated that Section 504 applies to those government agencies or departments during those time periods during federal funds are accepted. Id. at 113 n.2. When providing federal funds, Congress can require, as a condition of accepting those funds, that a state agree to waive its sovereign immunity from suit in federal court. Id. at 113. To effectively waive its sovereign immunity, a state must intentionally and knowingly waive its sovereign immunity. Id. at 114.

42 U.S.C. §2000-7 provides, in relevant part, that "[a] state shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal Court for a violation of Section 504 of the Rehabilitation Act of 1973. "Id. at 113. Despite the language that sounds like a waiver of immunity, Garcia held that New York had not waived its sovereign immunity under Section 504. Id. The Court reasoned that, at the time New York accepted the federal funds, ADA Title II was reasonably understood to abrogate New York's sovereign immunity. Id.[1] According to Garcia, because the proscriptions of Title II and Section 504 are virtually the same, "a state accepting conditional federal funds could not have understood that in doing so it was actually abandoning its sovereign immunity from private damage suits since by

---

[1] ADA Title II expressly provided that a state was not immune under the Eleventh Amendment from an action in federal or state court. Garcia, 280 F.3d at 114 (quoting 42 U.S.C. §12202).

6

all reasonable appearances state sovereign immunity had already been lost." Id. (citations omitted). Therefore, because New York had not knowingly waived its sovereign immunity from suit, Garcia's Section 504 claim was dismissed. Id. at 114-15.

The Second Circuit issued Garcia on September 25, 2001. To the extent that Johnson's claims are based on conduct that allegedly took place on or before September 25, 2001, he would be barred from suing Connecticut under Section 504 by the Eleventh Amendment because, just like New York, Connecticut could not have knowingly waived sovereign immunity when it accepted federal funds. Id. at 114-15.

Johnson has alleged that Southern Connecticut violated Section 504 between September, 2001 and December 11, 2001 by refusing to accommodate his mental disability after he returned from a medical leave of absence (Complaint ¶¶22-26). Therefore, the majority of the time period where he has alleged that the defendant violated Section 504 occurred after Garcia was decided. If Connecticut accepted federal funds after Garcia and during the time period from September 25, 2001 and December 11, 2001, Connecticut knowingly waived it sovereign immunity and could be sued under Section 504. In Denmeade v. King, 2002 U.S. Dist. LEXIS 17324 (W.D.N.Y. 2002), for example, the three plaintiffs, who each used wheelchairs, filed a lawsuit under inter alia, ADA Title II and Section 504. Id. at *2. The plaintiffs alleged that the defendants failed to provide the plaintiffs with access to campus programs, services, facilities and activities at the SUNY Buffalo campus. Id. The court held that the plaintiff's Section 504 claims were barred to the extent that they were based on conduct which occurred before Garcia was decided on September 25, 2001. Id. at *9. However, the court denied the Motion to Dismiss the Section 504 claim to the extent it may have been based on conduct that occurred after September 25, 2001. Id. The Denmeade court reasoned that "[b]y accepting conditional federal funds in light of Garcia, New York made a clear decision that it

7

waived sovereign immunity for claims arising after Garcia. Moreover, such acceptance implicitly or constructively waives New York's sovereign immunity." Id. at *11 (citations omitted).

Johnson alleged that Southern Connecticut is a recipient of federal funds. (Complaint ¶5). If it received those federal funds at any time between September 25, 2001 and December 11, 2001, then Southern Connecticut waived its sovereign immunity and can be sued by the Johnson under Section 504. See Denmeand v. King, 2002 U.S. Dist. LEXIS 17324 at *9. (W.D.N.Y.2002)

The defendant apparently is not seeking to dismiss plaintiff's Section 504 claims which relate to events which occurred on or after September 25, 2001. Rather, it only contends (and the plaintiff agrees) at plaintiff will not be entitled to money damages under Section 504 for these acts which occurred before Garcia was decided. Therefore, the plaintiff's Section 504 claim for events which occurred on or after September 25, 2001 should be allowed to proceed.

3. **The Plaintiff Requests That The Court Refrain From Dismissing His Claim Under ADA Title II Until the Supreme Court Rules in Lane v. State of Tennessee**

The plaintiff agrees with the defendant that, in Garcia, the Second Circuit held that a plaintiff seeking to recover damages against a state must present evidence of discriminatory animus or ill will. 280 F.2d at 112. Johnson's allegations of disability discrimination would not meet the threshold of discriminatory animus or ill will. Therefore, the plaintiff agrees that, at this time, he cannot pursue his claim under ADA Title II. However, due to the uncertainty surrounding the continued viability of Garcia, the plaintiff requests that the court refrain from dismissing, with prejudice, his ADA Title II claim at this time.[2]

The Circuit Courts of Appeals are sharply divided on the question of whether a state governmental entity can be sued for money damages under Title II of the ADA. Compare

---

[2] Rather than amending his complaint at this time to withdraw the ADA Title II claim, the plaintiff will wait until the court rules on the motions to dismiss filed by both defendants in this case.

8

Garcia and Pace v. Bogalusa City School Board, 325 F.3d 609, 613 (5th Cir.), hearing en banc granted, 339 F.3d 348 (5th Cir. 2003) with Doe v. State of Nebraska, 2003 U.S. App. LEXIS 20408 *18-22 (8th Cir., Oct. 7, 2003); and Lane v. State of Tennessee, 315 F.3d 680, 682-83 (6th Cir.) cert. granted, 2003 U.S. LEXIS 4818 (U.S. June 23, 2003). The U.S. Supreme Court has granted certiorari in Lane and will be wading through the uncertainty surrounding the questions of whether Congress exceeded it authority under Section 5 of the Fourteenth Amendment when it adopted Title II of the ADA. Until the Supreme Court decides in Lane, the plaintiff requests that the Court refrain from dismissing his claim with prejudice.

### 4. The Plaintiff Requests That The Court Dismiss His State Common Law Tort Claims Without Prejudice

The defendant relies on the Eleventh Amendment sovereign immunity doctrine to request that the court dismiss the plaintiff's fifth, sixth and seventh causes of action alleging state common law tort and breach of contract actions. Rather than challenging the defendant's arguments, the plaintiff requests that the court dismiss those claims without prejudice so he can pursue them in state court.

### 5. The Plaintiff Withdraws His Claim for Punitive Damages

Based on the United State Supreme Court's decision in Barnes v. Gorman, 536 U.S. 181 (2002), punitive damages are no longer an available remedy under Section 504. Therefore, the plaintiff agrees to remove his request for punitive damages.

### V. CONCLUSION

For all the foregoing reasons, the plaintiff requests that the court deny the defendant's motion to dismiss his Section 504 claim and dismiss without prejudice the state law claims.

THE PLAINTIFF,

JAMES JOHNSON

9

By /s/ Gary Phelan
Gary Phelan (CT 03670)
Gary Phelan, L.L.C.
433 South Main Street, Suite 117
West Hartford, CT 06110
(860) 313-5005

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was mailed, first-class, postage prepaid, on October 30, 2003 to:

Edward Osswalt, Esq.
Assistant Attorney General
55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120

Stuart M. Katz, Esq.
Cohen & Wolf, P.C.
1115 Broad Street
Bridgeport, CT 06604

/s/ Gary Phelan