## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAMES JOHNSON, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 3:02-CV-2065 (CFD) |
| | : | |
| SOUTHERN CONNECTICUT STATE | : | |
| UNIVERSITY and BRIDGEPORT | : | |
| HOSPITAL SCHOOL OF NURSE | : | |
| ANESTHESIA, | : | |
| Defendants. | : | |

## RULING ON MOTIONS TO DISMISS

_____The plaintiff, James Johnson, brought this action against the defendants, Southern

Connecticut State University ("Southern Connecticut") and the Bridgeport Hospital Nurse

Anesthesia Program (the "Program")[1] alleging violations of Title II of the Americans with

Disabilities Act of 1990, 42 U.S.C. §§ 12131-34 ("ADA"), Section 504 of the Federal

Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 ("Section 504"), Conn. Gen. Stat. §

17a-549 and Conn. Gen. Stat. § 46a-60(a)(1), as well as state common law claims for negligent

misrepresentation, breach of contract and promissory estoppel.[2]  Pending are Southern

Connecticut's Motion to Dismiss [Doc. # 7] and Bridgeport Hospital's Motion to Dismiss [Doc.

# 10].  For the following reasons, Southern Connecticut's Motion [Doc. #7] is GRANTED and

Bridgeport Hospital's Motion [Doc. #10] is DENIED.

_____

[1]The complaint named the Bridgeport Hospital School of Nurse Anesthesia as a
defendant. In its Motion to Dismiss [Doc.#10], however, the defendant noted that its proper name
is the Bridgeport Hospital Nurse Anesthesia Program. Accordingly, the Court will refer to the
defendant as the Program.

[2]Because Johnson has set forth claims under Title II of the ADA and Section 504 of the
Rehabilitation Act, jurisdiction is invoked under 28 U.S.C. § 1331.  Supplemental jurisdiction for
his state law claims is invoked under 28 U.S.C. §1367.

**I. Facts**

Johnson's complaint alleges the following, which is deemed true for purposes of resolving these motions to dismiss.[3]  In January 1999, Johnson was informed that he had been selected as a candidate for the Program.  The parties appear to agree that the Program is a not-for-profit joint nurse-anesthetist training program operated by Southern Connecticut, Bridgeport Hospital and Bridgeport Anesthesia Associates, P.C.  It is a two-year program which awards a Masters of Science in Biology from Southern Connecticut and a Certificate of Nurse Anesthesia from Bridgeport Hospital.  The parties also appear to agree that the Program is an unincorporated association.  Although Johnson named as defendants Southern Connecticut and "Bridgeport Hospital School of Nurse Anesthesia," he appears to agree that he has sued two entities: Southern Connecticut and the Program.

Johnson began the academic stage of the Program at Southern Connecticut in May 1999.  After completing that stage, Johnson began the clinical nursing portion, and was scheduled to graduate in May 2001.  At some point in March 2001, however, Johnson's performance level in

---

[3]In evaluating a Rule 12(b)(6) motion, a district court may not consider matters outside the pleadings without converting the motion into a summary judgment motion. Courtenay Communications Corp. v. Hall, 334 F.3d 210, 213 (2d Cir. 2003). As a result, a court has two options when confronted with material outside the pleadings on a Rule 12(b)(6) motion: (1) exclude the additional material and decide the motion only on the complaint, or (2) convert the motion into a summary judgment motion and give both parties the opportunity to present supporting material. Friedl v. City of New York, 210 F.3d 79, 83 (2d Cir. 2000). The Program submitted the affidavit of Dr. Diane Mericnyak, the Director of the Program, in support of its motion to dismiss, while Johnson submitted his affidavit in support of his memorandum in opposition. Both Johnson and the Program however, continue to refer to the Program's motion as a Rule 12(b)(6) motion, and neither has sought to convert it into a motion for summary judgment. Therefore, the Court will continue to treat the Program's motion as a motion to dismiss, disregard the information contained in the affidavits and decide the motion based on the allegations of the complaint.

the clinical portion began to decline due to extreme anxiety.  On March 8, 2001, Johnson met

with Dr. Buonafede, the medical director for the Program, and Dr. Mericnyak, the director of the

Program, to discuss his clinical performance.  After that meeting, Dr. Buonafede issued a

memorandum stating that "[i]n my opinion (not professionally trained in psychiatry, but capable

of recognizing impaired function in students in training), [Johnson] appears to be suffering the

effects of an acute stress response or some form of chronic anxiety disorder. It may be wise to

consider some form of professional counseling and/or psychological evaluation in order to better

help him overcome some of the difficulties he is experiencing in his training program. Until this

form of help for him is explored, I question whether or not he is capable of successfully attaining

his educational goals."

On March 22, 2001, Johnson once again met with Drs. Buonafede and Mericnyak, and

they informed him that his clinical work had been suspended, and provided him with three

options: (1) continue his academic course of study in order to complete the requirements for a

Masters in Science from Southern Connecticut and take a leave of absence from the clinical

phase until September 1, 2001, when he would be able to restart the nine-month clinical phase;

(2) continue his academic course of study and completely resign from the Program; or (3)

completely resign from both further academic study and the Program.  Johnson chose the first

option, took a leave of absence, and eventually returned to the Program in September 2001.  On

December 11, 2001, however, Johnson was dismissed from the Program.[4]

Johnson alleges that at no time was he offered any type of professional counseling or a

---

[4]Johnson's complaint fails to reveal the specific reason for his dismissal from the
Program.

psychological evaluation.  The student handbook issued by the defendants in May 2001 states that the faculty and administration of the program "will assist a student whenever possible . . . ." Johnson claims that, despite this representation, and despite the defendants' knowledge of Johnson's mental disability, the defendants failed to accommodate him during the three-month time period between his return from his leave of absence until the time he was dismissed from the Program.  As a result, Johnson alleges that he has suffered emotional distress, and requests compensatory and punitive damages.

## II. Standard for a Motion to Dismiss

In considering a motion to dismiss, a court "must read the Complaint liberally, drawing all inferences in favor of the pleader." IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1052 (2d Cir. 1993).  "To survive a motion to dismiss ... the complaint must allege facts which, assumed to be true, confer a judicially cognizable right of action." York v. Association of Bar of City of New York, 286 F.3d 122, 125 (2d Cir. 2002).  In determining a motion to dismiss, "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken are considered." Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

## III. Southern Connecticut's Motion to Dismiss

Southern Connecticut moves to dismiss Counts One, Two and Four through Seven under Fed. Rule Civ. P. 12(b)(1) and 12(b)(6).[5]  Southern Connecticut's challenge to each Count will be addressed in turn.

A) Count One alleges a violation of Conn. Gen. Stat. § 17a-549 by both defendants.  That

---

[5]Count Three of the complaint is only directed at the Program.

statute prohibits discrimination against any person based on a present or past history of mental disorder. Although Southern Connecticut State University is a named defendant, that count is directed at the state of Connecticut. See Barde v. Board of Trustees of Regional Comm. Colleges, 207 Conn. 59, 64 (1988) ("Although the named defendant here is the board of trustees of regional community colleges, these colleges are state public institutions and the real party in interest is the state."). Southern Connecticut claims that, although Connecticut has waived its immunity from suit *in state court* for violations of § 17a-549; see Conn. Gen. Stat. § 17a-550; it has not waived its Eleventh Amendment immunity from suit *in federal court*. See Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 99 (1984) ("[a] State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued")(emphasis in original). In his Memorandum in Opposition to the Motion to Dismiss, Johnson does not dispute this part of Southern Connecticut's argument. Consequently, Count One is dismissed without prejudice as to Southern Connecticut, absent objection.[6]

B) Count Two alleges a violation by both defendants of Section 504 of the Rehabilitation Act. Southern Connecticut moves to dismiss Count Two to the extent that it is based on events that occurred before September 25, 2001, the date the opinion in Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn, 280 F.3d 98, 113 (2d Cir. 2001) was issued by the United States Court of Appeals for the Second Circuit.[7] Johnson concedes that Count Two may not be based

---

[6]Johnson has not argued that Southern Connecticut's Eleventh Amendment immunity is affected by its participation with the non-state entities in the Program. Also, Southern Connecticut has not argued that only the Program is a proper defendant, and it is somehow shielded from liability on that basis.

[7]In Garcia, the plaintiff brought a claim under Section 504 of the Rehabilitation Act against the State University of New York Health Sciences Center at Brooklyn following his

upon events that occurred prior to <u>Garcia</u>.  Consequently, to the extent Count Two relies on events that occurred before September 25, 2001, it is dismissed, as to Southern Connecticut, absent objection.

C) Count Four alleges a violation by Southern Connecticut of Title II of the ADA.  In <u>Garcia</u>, the Second Circuit concluded that Title II of the ADA exceeds Congress' authority under

---

dismissal from the medical school. The district court granted summary judgment for the defendant. While an appeal was pending before the United States Court of Appeals for the Second Circuit, the Supreme Court held that Title I of the ADA was not an effective abrogation of state sovereign immunity under § 5 of the Fourteenth Amendment, and, therefore, the Eleventh Amendment bars private suits for money damages for state violations of Title I. <u>See</u>, <u>Bd. of Tr. of Univ. of Ala. v. Garrett</u>, 531 U.S. 356 (2001). Subsequently, the Second Circuit asked the parties in <u>Garcia</u> to brief the question of whether Title II of the ADA, as well as § 504 of the Rehabilitation Act, validly abrogated state sovereign immunity.  In its opinion, dated September 25, 2001, the Second Circuit concluded that:

> "Because § 504 of the Rehabilitation Act and Title II of the ADA offer essentially the same protections for people with disabilities . . . our conclusion that Title II of the ADA as a whole exceeds Congress's authority under § 5 of the Fourteenth Amendment applies with equal force to § 504 of the Rehabilitation Act. However, unlike Title II of the ADA, § 504 was enacted pursuant to Congress's authority under the Spending Clause of Article I. . . . [W]e are unable to conclude that New York in fact waived its sovereign immunity against suit under § 504 when it accepted federal funds for SUNY. At the time that New York accepted the conditioned funds, Title II of the ADA was reasonably understood to abrogate New York's sovereign immunity under Congress's Commerce Clause authority. Indeed, the ADA expressly provided that "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation...." 42 U.S.C. § 12202. Since, as we have noted, the proscriptions of Title II and § 504 are virtually identical, a state accepting conditioned federal funds could not have understood that in doing so it was actually abandoning its sovereign immunity from private damages suits, <u>College Savings Bank</u>, 527 U.S. at 682, 119 S.Ct. 2219, since by all reasonable appearances state sovereign immunity had already been lost . . . ."

<u>Garcia</u>, 280 F.3d at 113-14. Southern Connecticut notes that since <u>Garcia</u> was decided, several courts have dismissed Section 504 claims based on pre-<u>Garcia</u> conduct. <u>See, e.g.</u>, <u>Denmeade v. King</u>, 2002 WL 31018148, at * 2 (W.D.N.Y., Aug. 1, 2002) ("to the extent that plaintiffs' section 504 claims are based on violations alleged to have occurred before September 25, 2001 they are barred by the Eleventh Amendment.").

§ 5 of the Fourteenth Amendment. <u>Garcia</u>, 280 F.3d at 109-12.  The Second Circuit further concluded, however, that limiting claims to those in which the plaintiff could "establish that the Title II violation was motivated by discriminatory animus or ill will based on the plaintiff's disability" would narrow Title II in a manner that would bring it into compliance with Congress' authority under § 5 of the Fourteenth Amendment. <u>Id</u>., 111-12.  Since <u>Garcia</u> was decided, the rule in the Second Circuit has been that "a private suit for money damages under Title II of the ADA may only be maintained against a state if the plaintiff can establish that the Title II violation was motivated by either discriminatory animus or ill will due to disability." <u>Id.</u>, 112. Southern Connecticut claims that the facts alleged by Johnson fail to demonstrate the requisite level of scienter, and, therefore, Count Four should be dismissed.  Johnson concedes that he has not alleged facts sufficient to meet this threshold level.  Johnson requested, however, that the Court refrain from dismissing Count Four until the United States Supreme Court issued an opinion in <u>Tennessee v. Lane</u>, 315 F.3d 680 (6th Cir.), cert. granted, 2003 U.S. LEXIS 4818 (U.S. June 23, 2003).  The Supreme Court issued an opinion in <u>Lane</u> on May 17, 2004.  Although not briefed by either party, the holding of <u>Lane</u> is relevant in evaluating Count Four.

In <u>Lane</u>, the Supreme Court concluded that "Title II, as it apples to the class of cases implicating the fundamental right of access to the court, constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment." <u>Tennessee v. Lane</u>, __ U.S. __, __, 124 S.Ct. 1978, 1994, 158 L.Ed.2d 820 (2004).  This holding was extremely limited, however, as the Supreme Court declined to "examine the broad range of Title II's applications all at once" and instead concluded that the only question before it was "whether Congress had the power under § 5 to enforce the constitutional right of *access to the courts*." Id. at 1992-93

7

(emphasis added). See also, Badillo-Santiago v. Naveira-Merly, 378 F.3d 1, 6 (1st Cir. 2004) (Under the holding of Lane, the plaintiff's claim for money damages under Title II was not precluded by the Eleventh Amendment because his claim alleged a deprivation of due process due to the lack of a reasonable accommodation for his hearing impairment during a trial).

As noted previously, the Second Circuit's adoption of the heightened "discriminatory animus or ill will" standard for money claims brought under Title II was premised upon its conclusion that "Title II of the ADA as a whole exceeds Congress's authority under § 5 of the Fourteenth Amendment . . . ." Garcia, 280 F.3d at 113. That conclusion is in direct contrast to the Supreme Court's holding in Lane. Therefore, as one district court already has noted, "[g]iven the Supreme Court's decision in Lane . . . it would appear that there is no longer any basis to find the existence of a cause of action under Title II where no other fundamental right is implicated and the sole justification is the defendant's level of scienter." Roe v. Johnson, 2004 WL 1944460, at *5 n.9 (S.D.N.Y. Sep 01, 2004) (concluding that Title II is not a valid exercise of congressional power under § 5 of the Fourteenth Amendment and does not abrogate a state's Eleventh Amendment immunity in the context of a claim of discrimination against persons with disabilities seeking admission to a state bar).

Thus, in the wake of Lane, it appears that a private suit for money damages under Title II of the ADA may be maintained against a state only if the plaintiff can establish that the Title II violation involved a fundamental right. The Supreme Court has repeatedly held that the right to an education is neither explicitly nor implicitly guaranteed in the Constitution, and as such, cannot be considered "fundamental." See San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 35-37 (1973) (rejecting claim that education is a fundamental right, thereby

8

triggering strict scrutiny review under the Equal Protection Clause); see also <u>Kadrmas v. Dickinson Public Schools</u>, 487 U.S. 450, 458 (1988); <u>Papasan v. Allain</u>, 478 U.S. 265, 284-85 (1986); <u>Martinez v. Bynum</u>, 461 U.S. 321, 328 n. 7 (1983); <u>Plyler v. Doe</u>, 457 U.S. 202, 223 (1982); <u>Dunbar v. Hamden Bd. Of Educ.</u>, 267 F.Supp.2d 178, 181 (D. Conn. 2003) (noting that education is not among the rights afforded explicit protection under our Federal Constitution). Moreover, while those cases all involved primary school education, Johnson's action arises in the higher education setting.  Courts have concluded that there is no fundamental right to a higher education.  <u>See, e.g.</u>, <u>Cady v. South Suburban College</u>, 310 F.Supp.2d 997 (N.D.Ill 2004) ("There is no general constitutional right to higher education."); <u>Black v. Sullivan</u>, 561 F.Supp. 1050, 1058 (D.Me. 1983) ("A state-subsidized, post-secondary education is not a fundamental constitutional right."); <u>Gurfinkle v. Los Angeles Community College Dist.</u>, 121 Cal.App.3d 1, 175 Cal.Rptr. 201, 203 (1981) (rejecting claim that the fundamental right to a primary education provided by the California Constitution extends to a right to a college or community college education).  Since <u>Lane</u>, one district court has held that education is not a fundamental right for purposes of Title II, and, therefore, states continue to enjoy Eleventh Amendment immunity from suits for money damages.  <u>See</u> <u>McNulty v. Board of Educ. of Calvert County</u>, 2004 WL 1554401, at *3 (D.Md. Jul 08, 2004) (applying the holding of <u>Lane</u>; "[T]his court finds that Eleventh Amendment immunity remains intact for education claims under Title II of the ADA.")  Accordingly, Count Four is dismissed.

D) Counts Five, Six and Seven, all directed against both defendants, allege state common law claims of negligent misrepresentation, breach of contract and promissory estoppel.  Southern Connecticut moves to dismiss those claims on the ground that it enjoys both Eleventh

9

Amendment and common law sovereign immunity. Johnson declined to address the merits of

Southern Connecticut's argument, and concedes that dismissal is proper. Consequently, Counts

Five, Six and Seven are dismissed without prejudice, as against Southern Connecticut, absent

objection.

E) In his request for relief, Johnson sought punitive damages for the alleged violation of

Section 504 of the Rehabilitation Act. Southern Connecticut moved to dismiss this request for

relief on the ground that punitive damages may not be awarded under Section 504 of the

Rehabilitation Act. Johnson also agrees with Southern Connecticut's argument. See Barnes v.

Gorman, 536 U.S. 181, 189 (2002) ("punitive damages may not be awarded in private suits

brought under . . . § 504 of the Rehabilitation Act."). Accordingly, that portion of Johnson's

request for relief is dismissed, absent objection.[8]

In sum, Southern Connecticut's Motion to Dismiss [Doc.#7] is granted in its entirety,

leaving only Count Two, to the extent it relies on events occurring after September 25, 2001,

pending against Southern Connecticut.

## IV. The Program's Motion to Dismiss

Counts One, Two, Three and Five through Seven are directed against the Program.[9] The

Program moves to dismiss those claims for: (1) lack of subject matter jurisdiction under Fed.

Rule Civ. P. 12(b)(6); and (2) insufficient service of process under Fed. Rule Civ. P. 12(b)(5).

For the following reasons, the Motion to Dismiss [Doc. # 10] is denied.

---

[8]Johnson also sought punitive damages for the alleged violation of Title II of the ADA
and for his state law claims. The dismissal of those claims has rendered Southern Connecticut's
motion to dismiss that portion of the requested relief moot.

[9]Count Four of the complaint is directed only at Southern Connecticut.

The Court first turns to the Program's Rule 12(b)(6) argument.  The Program correctly states that the only claim that provides this Court with federal subject matter jurisdiction is Count Two, which alleges a violation of Section 504 of the Rehabilitation Act.  In regard to that claim, the Program argues that Johnson "cannot successfully claim that he was [an] employee, and, therefore, he cannot establish subject matter jurisdiction for an employment discrimination claim under Section 504 of the Rehabilitation Act, as alleged in the Second Count of the Complaint." Moreover, the Program argues that since the Court lacks subject matter jurisdiction on Count Two, the Court should decline to exercise supplemental jurisdiction over Johnson's remaining claims, all of which are based on state law. See 28 U.S.C. § 1367.

The complaint alleges that Johnson suffered discrimination while "a student of and employed by the Bridgeport Hospital School of Nurse Anesthesia."  In its Motion to Dismiss, the Program does not argue that students or employees cannot avail themselves of the protections afforded by Section 504.  Instead, the Program essentially argues that Johnson was not, and will not be able to prove, that he was an employee of the Program.  This argument is premature.  The Federal Rules of Civil Procedure require only that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); see also Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (stating that "the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial").  "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S.

11

232, 236 (1974). Therefore, a "district court should deny the motion [to dismiss] unless it appears to a certainty that a plaintiff can prove no set of facts entitling him to relief." <u>Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.</u>, 748 F.2d 774, 779 (2d Cir. 1984). Taking the facts alleged in a light most favorable to Johnson, the Court cannot conclude that Johnson has failed to assert a legally cognizable claim, or that he would be unable to prove he was an employee of the program.

Even if the Court were to agree with the Program, however, dismissal of Count Two is not warranted based on the allegations of the complaint. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination *under any program or activity receiving Federal financial assistance* . . . ." 29 U.S.C. § 794 (emphasis added); <u>see also</u>, <u>Leake v. Long Island Jewish Medical Center</u>, 869 F.2d 130, 131 (2d Cir. 1998) (noting that The Civil Rights Restoration Act of 1987, Pub.L. No. 100-259, 102 Stat. 28, 29 (1988) mandates that *any program* in an institution that receives federal financial aid, no matter how specific the purpose or program for which that aid is given, must follow the guidelines of the Rehabilitation Act of 1973); 45 C.F.R. § 84.3(f) (defining "recipient" for purposes of Section 504). Johnson has alleged that he was a student of the Program, and that the Program is a "federal fund recipient" as defined by Section 504 of the Rehabilitation Act. (Compl. ¶ 6) Although the Program has argued that it is not a federal fund recipient, evidentiary questions about whether the Program receives federal funding, and to what extent that funding requires the Program to adhere to the anti-discrimination provisions of Section 504 of the Rehabilitation Act, are not properly

before the Court in this Motion to Dismiss. See Ryder Energy Distribution Corp., 748 F.2d at

779 (a "district court should deny the motion [to dismiss] unless it appears to a certainty that a

plaintiff can prove no set of facts entitling him to relief.").

   The Program next claims that, even if this Court does have subject matter jurisdiction, the

action should be dismissed for insufficient service of process under Rule 12(b)(5).  Because the

Program is a voluntary unincorporated association, service of process should be effected "by

delivering a copy of the summons and of the complaint to an officer, a managing or general

agent, or to any other agent authorized by appointment or by law to receive service of process . . .

." Fed. R. Civ. P. 4(h)(1).  The return of service shows that Johnson served a copy of the

summons and complaint on Joann Krause, who is employed by the Southern Connecticut Pain

Center, P.C., in Trumbull, Connecticut.  The Program argues that this fails to comply with Rule

4(h), and, therefore, the action against it should be dismissed.  Johnson concedes that his service

upon Krause failed to comply with Rule 4(h).

   "If service of the summons and complaint is not made upon a defendant within 120 days

after the filing of the complaint, the court, upon motion or on its own initiative after notice to the

plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be

effected within a specified time; provided that if the plaintiff shows good cause for the failure,

the court shall extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m).  It

appears, therefore, that under the language of Rule 4(m), a district court must follow a two-step

procedure when addressing a motion to dismiss for insufficient service of process.  First, the

district court should determine whether good cause exists for the plaintiff's failure to execute

proper service.  If good cause is present, the district court "shall" extend time for service and the

inquiry is ended.  If, however, good cause does not exist, the court "shall dismiss the action

without prejudice as to that defendant *or* direct that service be effected within a specified time."

Id. (emphasis added); see also McCurdy v. American Bd. of Plastic Surgery, 157 F.3d 191, 196

(3d Cir. 1998) (noting two step process under Rule 4(m)); 6 Moore's Federal Practice § 4.83

(Matthew Bender 3d ed.1997) (citing additional cases).  When exercising its discretion under the

second step, a district court must be mindful that dismissal is not favored when there is a

reasonable prospect that service may yet be obtained. Romandetter v. Weetabix Company, Inc.,

807 F.2d 309, 311 (2d. Cir. 1986); Hickory Travel Systems, Inc. v. TUI AG, 213 F.R.D. 547, 553

(N.D.Cal. 2003); Jack E. Dominik, P.A. v. Comsof N.V., 293 F.Supp.2d 1288, 1290 (S.D.Fla.

2003); Amous v. Trustmark Nat. Bank, 195 F.R.D. 607, 610 (N.D.Miss. 2000).  Moreover, a

court should consider 1) whether the statute of limitations would bar a re-filed action, 2) whether

the defendant had actual notice of the claims asserted in the complaint, 3) whether the defendant

had attempted to conceal the defect in service, and 4) whether the defendant would be prejudiced

by excusing the plaintiff from the time constraints of the provision. Feingold v. Hankin, 269

F.Supp.2d 268, 277 (S.D.N.Y., 2003);  Eastern Refractories Co. v. Forty Eight Insulations, Inc.,

187 F .R.D. 503, 506 (S.D.N.Y.1999).

        Johnson has not identified any good cause for the insufficient service.  Therefore, the

Court may "dismiss the action without prejudice" or "direct that service be effected within a

specified time."  Because the Court finds that service may yet be made on the Program, and that

the Program received actual notice of the complaint and did not suffer any prejudice as a result of

the improper service, the Court will grant Johnson an additional 30 days from the date of this

order to effect proper service on the Program.  If Johnson fails to effect proper service within 30

14

days from the date of this order, his claims against the Program will be dismissed.

SO ORDERED this __30th__ day of September 2004, at Hartford, Connecticut.

/s/ CFD
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**